**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DORIS FEERER, et al.,

        Plaintiffs,

    vs.                                 No. CIV 95-0012 JC/WWD

AMOCO PRODUCTION COMPANY, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Plaintiffs' Motion to Enforce Settlement Agreement *(Doc. 935)*. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties and took the motion under consideration after hearing the arguments of counsel on March 4, 1999. The Court finds that the motion is well taken and will be granted.

### Background

In this class action lawsuit, Plaintiffs contended that the defendants had improperly deducted certain costs in the calculation of royalty payments owed to them for carbon dioxide ($CO_2$) produced in the Bravo Dome Carbon Dioxide Gas Unit. The costs at issue included expenses related to compression, dehydration and gathering of the $CO_2$ as well as transportation costs and marketing fees. A settlement agreement reached on March 31, 1998 was subsequently approved by the Court. I specifically retained continuing jurisdiction as to the "implementation, construction, and enforcement of" the settlement.

According to Paragraphs 9 through 13 of the settlement agreement, Defendants agreed that they would not deduct such costs in calculating royalty payments to the members of the Class as to the production of $CO_2$ occurring on or after January 1, 1997 (as to Defendant Exxon) and as of January 1, 1998 (as to Defendants Amoco, Hess and Shell). Pursuant to Paragraph 18, these sums were to be deposited into the Registry of the Court until the Court's May 28, 1998 judgment became final. After the judgment became final, the additional sums were to be paid directly to the royalty owners.

Defendants maintain that they can subtract certain sums as additional "taxes" from the payments to the Plaintiff Class owed under the settlement agreement.[1] They concede that the settlement agreement gives rise to no new taxable value as to the carbon dioxide produced--the State of New Mexico is entitled to the same amount of severance taxes before and after the settlement. Defendants attempt to characterize the present motion as an attempt to force them to pay Plaintiffs' severance taxes when they never agreed to do so. The true dispute, however, lies in how the severance tax burden should be allocated as to the plaintiff royalty interest owners and the defendant working interest owners under New Mexico law and the terms of the settlement agreement.

### Determination of Tax Liabilities

The New Mexico Oil and Gas Severance Tax imposes a tax on the value of $CO_2$ severed from the land and requires the defendants as operators of the production unit to determine the "taxable value" of the $CO_2$ product. N.M. Stat. Ann. § 7-29-4.1. In the case of $CO_2$, taxes are based upon the "wellhead" value of the carbon dioxide product severed from the ground. See N.M. Stat.

---

[1] Amoco and Shell have not withheld any additional amount for severance taxes from the payments deposited with the Court, but join with the other defendants in their intent to withhold such additional taxes from ongoing payments to the royalty owners.

Ann. § 7-29-4A. Often $CO_2$ severed at the wellhead is not sold until it has been compressed and dehydrated and finally reaches the "tailgate" point of the process. Where the sale of $CO_2$ occurs "downstream" of the wellhead, the New Mexico Taxation and Revenue Department permits the "wellhead" value to be calculated by subtracting post-production costs relating to dehydration and compression from the "tailgate" price that had been received.

Under New Mexico law, "[e]very interest owner shall be liable for the tax to the extent of his interest in such products." N.M. Stat. Ann. § 7-29-4(C). Plaintiffs assert that their severance liability should be determined based upon their proportionate mineral interest in the total $CO_2$. Thus, if a royalty owner holds a one-eighth interest under a lease, then his tax liability is determined by applying the severance tax rate to his proportionate mineral interest in the total wellhead value of $CO_2$. This method conforms with the pre-settlement method for allocation of the tax burden.

As the Unit's operators, Defendants are required to withhold severance taxes from payments to an interest owner "for his proportion of the <u>value</u> of products from the production unit." <u>See</u> N.M. Stat. Ann. § 7-29-6 (emphasis added). Defendants contend, therefore, that because the settlement relieves the plaintiff royalty owners from sharing in certain post-production costs, the "value" of the royalty owners' interest has increased. Defendants rely upon a corresponding decreased "value" of the working interests for taxation calculations. The Class supposedly "owes" a greater proportionate share of the past and future severance taxes assessed against the entire production unit. The "deductions" unilaterally withheld from the royalty payments under the settlement agreement purportedly represent an increased severance tax burden for the plaintiff royalty owners *vis-a-vis* the defendant working interests.

The following simplified chart sets forth the positions of both the Defendants and Plaintiffs as to how the respective interests should be calculated for tax allocation:

| | | |
|---|---|---|
| Amount received at tailgate for $CO_2$ | | $100 |
| Post-production costs | - | $ 20 |
| | | ---------- |
| Wellhead value of $CO_2$ | | $ 80 |
| | | |
| Tax rate of 7.5% | x | 0.075 |
| | | ---------- |
| Total severance tax owed | | $ 6.00 |

### *Plaintiffs' Position*

| | | |
|---|---|---|
| Tax on royalty owner's **c** mineral interest | $ 0.75 | (**c**) x 6.00 |
| Tax on defendant's **f** working interest | $ 5.25 | (**f**) x 6.00 |

### *Defendants' Position*

| | | |
|---|---|---|
| Tax on royalty owner's **c** mineral interest | $ 0.94 | ((**c**) ($100)) x .075 |
| Tax on defendant's **f** working interest | $ 5.06 | [((**f**) ($100)) - ($20)] x.075 |

Distilled to its essence, Defendants seek to use the "tailgate" value rather than the "wellhead" value for calculating the severance taxes owed by Plaintiffs. This result seems in direct contradiction to the dictates of Section 7-29-4A. To my knowledge, there are no New Mexico decisions on point. The parties have therefore relied upon rulings implicating similar Texas statutory provisions.

In <u>Mobil Oil Corp. v. Calvert</u>, 451 S.W.2d 889 (Tex. 1970), the Texas Supreme Court determined that respective tax liability should be based on the owner's mineral interest in the products

sold rather than on the amount of actual net proceeds received by each owner. I agree with Plaintiffs that this method of severance tax apportionment is more appropriate under the New Mexico statutory provisions. The Texas administrative decision cited by Defendants is of little persuasive value in my mind.

Moreover, the settlement agreement says nothing about a new method for severance tax calculations based upon differing values for royalty owners and for working interests. This silence leads me to believe that the parties contemplated no change in the proportional "mineral interest" allocation after determining the wellhead value. As Hess and Shell concede, "No adjustment or allocation of tax liabilities was ever discussed or agreed to in the settlement." Resp. Br. at 2. In fact, the agreement specifically states that the parties "do not anticipate that any deposited funds will be subject to any taxes other than state and federal taxes." Settlement Agreement at ¶ 18.5.

I agree with the Calvert decision and find that the tax to be paid was "not affected by [Defendants'] agreement to assume payment of the processing costs theretofore paid by the royalty owners." Id. At 892. Therefore, I find that the "value" of the carbon dioxide for severance tax calculations is the same for royalty interest and working interest owners. Defendants are not entitled to a further "deduction" in the taxable value. Defendants are protected in the event that I have incorrectly applied New Mexico law. Under both New Mexico statutes and the settlement agreement, Defendants are entitled to reimbursement from interest owners for any taxes paid on their behalf.

Wherefore,

IT IS ORDERED that Plaintiffs' Motion to Enforce Settlement Agreement *(Doc. 935)* be, and hereby is, **granted**. With respect to ongoing payments to be made under Paragraph 18.6 of the

settlement agreement, Defendants shall refrain from deducting any amount in excess of their respective royalty owner's proportionate share, as determined in accordance with this opinion, of the taxable value of carbon dioxide produced from the Bravo Dome Unit.

IT IS FURTHER ORDERED that Exxon and Amerada Hess deposit the amounts they have incorrectly withheld from the sums that were to have been deposited pursuant to Paragraph 18 of the settlement agreement. If the defendants disagree with the figures shown in the affidavit of the Settlement Administrator ($4,382.27 as to Exxon and $7,106.41 as to Amerada Hess), they shall provide an accounting of such sums and immediately deposit them with the Court.

DATED this 8th day of April, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**